Argued May 20, affirmed June 11, reconsideration denied July 17, petition for review allowed August 6, 1974.

COLUMBIA MANAGEMENT COMPANY,
*Petitioner, v.* MORGAN, *Respondent.*

522 P2d 1396

*Terry DeSylvia,* Portland, argued the cause for petitioner. With him on the brief were Black, Kendall, Tremaine, Boothe & Higgins, Portland.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

This is an administrative review appeal from a decision of the State Employment Division affirming a determination that petitioner was an employer subject to the Employment Division Law, ORS ch 657, during the period of October 1, 1969 to February 1, 1973.

Columbia Management Company is an Oregon corporation formed in 1969 to perform management services for two mutual funds, Columbia Growth Fund and Columbia Investors Fund. The two mutual funds were established through the efforts of Rippey, Inskeep, Hess & McFaul, Inc. (hereafter Rippey), an Oregon registered broker/dealer and a member firm of the Midwest Stock Exchange. Prior to October 1969 Rippey performed the management services for the two mutual funds. From October 1, 1969 until February 1, 1973, employes of Rippey continued to perform the same services pursuant to a contract between Rippey and Columbia Management Company. The terms of the contract provided that Columbia Man-

agement Company would pay Rippey for the payroll of its employes plus a fee fixed by the contract.[1]

There is considerable overlap between the ownership of Rippey and Columbia Management. Columbia Management Company's five owners control approximately 80 percent of Rippey's stock. J. Jerry Inskeep, Jr., is the chief executive officer of both Rippey and Columbia Management Company.

Both parties here agree that the facts in *Lectro Lift, Inc. v. Morgan,* 14 Or App 316, 320, 513 P2d

---

[1] The first contract, that of January 4, 1971, included these pertinent provisions:

"Rippey shall furnish all necessary personnel to meet the requirements of Columbia and said personnel shall be subject to the order and directions of Rippey and under the exclusive control of Rippey and shall be employed by and paid by Rippey. Rippey shall maintain all payroll records and provide for all * * * tax withholding, payroll taxes * * *.

"Columbia shall pay to Rippey a fee which shall be determined by the total of all the salaries, payroll taxes * * * plus 10% of all salaries, bonuses and commissions paid by Rippey to its employees furnished to Columbia * * *.

"Nothing in this Agreement shall be construed to create an employer-employee relationship. Rippey shall at all times be an independent contractor and the employing unit * * *."

The amended contract of January 3, 1972 changed the 10 percent fee Columbia paid Rippey to a straight $50 per month, but otherwise remained the same.

In the referee's findings and decision, inter alia, are the following:

"* * * (8) The agreement was terminated sometime during the month of January, 1973, when plaintiff [petitioner] set up its own payroll department and hired its own employees. (9) Although none of the individuals who rendered services to plaintiff did so on a full-time basis, the nature of their work was of such a highly skilled degree that it could not be secured elsewhere other than through Rippey. (10) The services consisted of such things as research, making up and managing portfolios, direct accounting for clients and arranging for banking institutions to hold securities on behalf of clients. (11) The figures shown as wages on the Employer's Quarterly

526 (1973), parallel this case. There we held that

"* * * when an individual performs services for remuneration he or she is an employe and the person or organization for whom the services are performed is an employer under the terms of this Act even if remuneration is paid indirectly rather than directly unless the 'employer' shows that the exceptions described in ORS 657.040 (1) and (2) * * * apply * * *."

Petitioner asserts that the evidence shows that the exceptions described in ORS 657.040 (1) and (2) do apply.

---

Report of Employes' Wages and Weeks of Work (Exhibit No. 7) for the calendar quarter ending December 31, 1969, are based upon the amount of time spent by the individuals listed thereon rendering services to plaintiff. (12) Rippey reported all of the individuals' wages and weeks of work to the Employment Division under its name, paying a payroll tax thereon for the amounts required ($4,200 maximum per individual) and at a favorable tax rate experience to it. (13) Beginning on February 1, 1973, plaintiff's volume of business became such as to require the hiring of full-time employees which it has done and assumed the usual obligations thereto of an employer (including the reporting of its payroll and paying of tax thereon to the Employment Division). (14) Initially plaintiff and Rippey occupied the same quarters; however, since August, 1971, they have had separate facilities including entranceways and reception areas. (15) The auditor with the Employment Division was requested to investigate this matter upon plaintiff's application for a firm no. representing that it had no employees until February 1973. (16) The Employment Division, after completion of the investigation, determined that plaintiff, through use of Rippey's employees, had been an employer since its inception or from October 1, 1969 * * *.

"* * * * *

"Although the agreement entered into January 4, 1971, between plaintiff and Rippey specified that the individuals used in rendering services to plaintiff were to remain the employees of Rippey, such agreement cannot, of course, be used to defeat the purposes of the Employment Division Law * * *.

"* * * * *

"Plaintiff reimbursed Rippey as well as paying either a commission or a flat fee for the services rendered to it, therefore, it had employees and was an employer." (Emphasis supplied.)

ORS 657.040 (1), which is the only subsection of ORS 657.040 pertinent to this inquiry, provides:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the administrator that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service *and in fact* * * *." (Emphasis supplied.)

Petitioner raised this issue below but the order appealed from does not discuss it, unless the part of the findings and decision emphasized in the quote therefrom in n 1 impliedly does so.

■ Under the contract between Columbia Management Company and Rippey, Columbia had no right to control those employes. A serious question arises as to whether this lack of control was also true *in fact* within the meaning of ORS 657.040 (1). We agree with the referee's conclusion that a provision in an agreement simply made to avoid the unemployment insurance law is ineffective for that purpose, at least in this case. This is because it has not been shown that the employes are "in fact" free from control of Columbia Management.

The burden to establish the application of the exceptions stated in ORS 657.040 lies with the employer. *Barger v. Morgan,* 13 Or App 111, 507 P2d 821, Sup Ct *review denied* (1973). Here the petitioner's evidence shows that Inskeep, the chief executive officer of Columbia Management, was the supervisor of Rippey's employes while they performed services for Columbia Management. The fact he also was their supervisor while they performed services for Rippey

does not alter the conclusion that there was no freedom from control and direction by him as executive of Columbia, in fact, while they worked for Columbia.

Affirmed.